IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARGO L. ROYER,
     Plaintiff,
v.
PENNSYLVANIA STATE UNIVERSITY,
     Defendant

Case No. 03:00-cv-290-KRG-KAP

Report and Recommendation

Plaintiff has filed a motion to vacate the judgment in this matter under the catch-all provision of Fed.R.Civ.P. 60, Rule 60(b)(6). See Morris v. Horn, 187 F.3d 333, 341-43 (3d Cir.1999)(Rule 60 is not a supplemental appeal or a second opportunity to litigate the merits of an action). The motion should be denied because it is based on a meritless blanket accusation of judicial bias. As the Second Circuit observed recently:

[N]o party to litigation is entitled to a prescreened panel of sympathetic judges, and we have no patience for [] homegrown psycho-social theories contrived to achieve that end.

Gallop v. Cheney 660 F.3d 580, 585 (2d Cir.2011).

Plaintiff Royer, represented by counsel, commenced suit in late October 2000 against Penn State and the Teamsters Union Local No. 8, alleging various legal wrongs by Penn State and the Teamsters during the course of Penn State's firing of Royer in 1999. Plaintiff's first counsel withdrew in March 2001, and plaintiff's second counsel, who entered in April 2001, voluntarily dismissed the Teamsters as a defendant in May 2001. In July 2001, second counsel also moved to withdraw, and after a few months during which plaintiff acted pro se, Don Bailey, Esquire, entered

his appearance in January 2002. Penn State filed a motion for summary judgment in February 2002. Attorney Bailey moved for and was granted additional time to conduct discovery and filed an opposition to Penn State's motion in May 2002.

Judge Smith, at that time the Chief Judge of this district, and who had been nominated to a seat on the Court of Appeals in September 2010, granted summary judgment to Penn State in a 24-page Memorandum Opinion on September 12, 2002. On appeal, a panel of the Court of Appeals - Judge Sloviter, Judge (now Justice) Alito, and Judge Oberdorfer (of the District Court for the District of Columbia, sitting by designation) - affirmed the grant of summary judgment in a 5-page *per curiam* opinion issued on January 5, 2004.

Eight years after the circuit affirmed this court's grant of summary judgment to defendant, plaintiff seeks to re-open the litigation based on the alleged existence of "an agenda of secrecy surrounding Penn State University" and "the dominance of a prevailing agenda to hurt and harm my attorney, Don Bailey... ." In general, a court considering a recusal motion under 28 U.S.C.§ 144 or 28 U.S.C.§ 455 can rule summarily without conducting factfinding proceedings or assuming the truth of a litigant's contentions. See ClearOne Communications, Inc. v. Bowers, 643 F.3d 735, 777 (10th Cir.2011); Skolnick v. Doria, 103 F.3d 133 (7th Cir.1996). A party cannot manufacture grounds for recusal by

fantastic allegations, Gallop v. Cheney, supra, by vague accusations or by alleging in conclusory terms that a judge is biased, by filing an ethics complaint against a judge, or even by suing a judge. See United States v. Studley, 783 F.2d 934, 939-40 (9th Cir.1986). No different rule applies under Rule 60 where the Rule 60 motion is essentially an attack on impartiality of the judges who previously heard the case.

Plaintiff alleges that Judge Smith ruled the way he did because he "was a Penn State alumnus who was up for a seat on the Third Circuit" and "is on the paid faculty of Penn State" and (was) "involved significantly in the merger of Penn State and Dickinson Law School during the pendency of my case before him." Plaintiff also suggests that Judge Smith ruled against her just because she is a woman, that her first attorney sabotaged her case because he was a Penn State graduate, and that the alleged recusal of several district judges from the Middle District of Pennsylvania and of Judge Scirica of the Court of Appeals from cases involving Attorney Bailey confirms the existence of a conspiracy to rule against persons represented by Bailey. Judge Scirica is mentioned because he allegedly "ruled on a later motion in my case, and the circumstances suggest that I was completely deprived of access to justice in my case because of who I sued and who my attorney was." Plaintiff says she learned about the conspiracy against her third attorney and the facts supporting her other allegations on the

3

internet. The judges on the appellate panel allegedly were part of the massive conspiracy against Attorney Bailey, but are not alleged to share Judge Smith's particular bias in favor of Penn State.

The alleged recusal of Judge Scirica in an unrelated case involving Attorney Bailey does not suggest in any way that plaintiff's complaint was not handled fairly. As for the half-hinted innuendos and accusations about Judge Smith, plaintiff incorrectly describes him as an alumnus of Penn State (Franklin and Marshall undergrad in 1973, Dickinson School of Law in 1976, long before the merger) and incorrectly dates the merger of Dickinson and Penn State (begun in 1997 and completed in 2000, not "during the pendency of her case"). If my recollection is correct, the Senate had confirmed Judge Smith for the Court of Appeals before the ruling in plaintiff's case, so plaintiff's suggestion that Judge Smith's ruling was an attempt to curry favor with the Senate is either a delusion of plaintiff's or truly poor timing by Judge Smith. To avoid any ambiguity, let me make it clear that I believe the plaintiff's unspoken idea that Judge Smith thinks that Penn State has the United States Senate in its pocket is delusional, not that Judge Smith's timing is bad.

Plaintiff does not say when Judge Smith was a faculty member at Penn State, or distinguish between the law school and the university or between the main campus and the several branch

4

campuses. While I recall substitute teaching on one occasion for Judge Smith in the 1980s (I was his law clerk, he was on the Court of Common Pleas) when he taught a Business Law class at Penn State Altoona, during the early 2000s I believe Judge Smith was a trustee of St. Francis University in Loretto and to the best of my recollection was not teaching at Penn State. But if Judge Smith did in fact teach (whether undergraduates at Penn State Altoona or law students at Carlisle or University Park) during that time, and was paid for it, teaching at Penn State would not constitute a "financial interest" that would have disqualified him under 28 U.S.C.§ 455. Cf. Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 863 n.11 (1988)(judge who was on university's board of trustees when university dealt with corporation should have recused from litigation involving corporation where university had interest in outcome of litigation).

I have looked through the entire record of this matter since it came back from the archives, and the defects in the motion to re-open are remarkably similar to the defects in the underlying case: vague accusations of conspiracy and dark intimations about corrupt motives abound, and the lack of factual support for the accusations is patent. I could string-cite lower court opinions from the last 20 years in which disappointed litigants alleged vaguely that the reason for their disappointment was the bias of

the judge and not the merits of the case, but what would be the point?

If the plaintiff truly believes there is evidentiary value in the internet page she cites as the foundation for her motion, plaintiff is also going to reject anything I, or Judge Gibson, or the next panel of the Court of Appeals says because we are all part of what she refers to as the "good old boys network," and each rejection of her notions will convince her only that the conspiracy goes even deeper than she suspected. As I mentioned, I clerked for Judge Smith. I have eaten lunch with Judge Alito (and his wife), and also chatted amiably with Judge Oberdorfer, who has family from the same home town as I do. My wife received her degrees from Penn State, and I taught at Penn State Altoona in the 1980s. These are not the sort of contacts that would have caused a reasonable person to question the impartiality of any jurist who handled any part of this case, least of all Judge Smith. Attorney Bailey himself, in the brief he filed in opposition to summary judgment, see docket no. 49 at 1, referring obliquely to the procedural history of the case, commented on Judge Smith's "fastidious adherence to objectivity." I have never seen that kind of spontaneous compliment in any other civil case.

Because no recusal under 28 U.S.C. § 455 would have been appropriate then, no motion to re-open under Rule 60 is appropriate now even if I did not consider whether, if plaintiff's allegations

6

were supported by evidence, plaintiff's lack of diligence would urge against re-opening a long-settled matter. But that plaintiff's motion to vacate the judgment be made within a reasonable time is an express requirement of Rule 60(c). That a motion to recuse be timely is an explicit requirement of 28 U.S.C.§ 144, and an implicit requirement of 28 U.S.C.§ 455. <u>In re IBM Corp.</u>, 618 F.2d 923, 932 (2d Cir.1980). Why it has taken eight years for plaintiff allegedly to discover the conflicts she claims Judges Smith, Sloviter, Oberdorfer, and Justice Alito should have seen in 2002, plaintiff does not say. Because it is obviously the ruling and not the judge plaintiff is seeking to avoid, the Rule 60 motion should be denied.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have fourteen days to serve and file written objections to this Report and Recommendation.

DATE: 28 February 2012

Keith A. Pesto,
United States Magistrate Judge

Notice to counsel of record by ECF and by U.S. Mail to:

    Margo L. Royer
    528½ Juniata Street
    Dubois, PA 15801